***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement dated 5 June 2001, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On 6 January 1999, the date of the injury, this cause was subject to the North Carolina Workers' Compensation Act.
4. On said date, an employment relationship existed between plaintiff and defendant-employer, J.D. Barnes Enterprises, Inc.
5. Defendant-employer is insured by The Travelers.
6. Plaintiff's injury which is the subject of this cause is a back injury which occurred on 6 January 1999.
7. Plaintiff's average weekly wage was $140.00 per week, yielding a compensation rate of $93.34 per week.
8. Plaintiff was paid for the entire day of the incident.
9. Defendants have paid $955.00 in indemnity benefits for the period of 7 January 1999 through 19 March 1999 and medical compensation in the amount of $11,697.00 through 14 May 2001.
10. Documents stipulated into evidence include the following:
a. Medical records from Southeast PainCare
b. Memo from Bob Gowdy to Melissa Jones dated 19 February 1999
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was a 32 year old woman at the time of the hearing before the Deputy Commissioner. She had obtained her GED. Plaintiff's work history consists mainly of waitress positions.
2. Plaintiff worked part-time for defendant-employer as a delivery driver/caterer. Her duties included using her own car to make deliveries of catered goods to customers.
3. On 6 January 1999, plaintiff was making the first of three deliveries when she experienced a sharp pain in her mid-back while lifting crates out of the back seat of her car. Plaintiff completed the first delivery but was unable to complete the next two, and she returned to defendant-employer's shop. When she reached the shop, plaintiff could not place the vehicle in park and required the help from other co-workers to get out of the car. Prior to this injury, plaintiff had not experienced back problems. Plaintiff's co-workers took her to ProMed, defendant-employer's medical provider, for treatment.
4. At ProMed, plaintiff was given medication and taken out of work; however, the pain persisted. When plaintiff failed to respond to the treatment provided by ProMed, she was referred to Dr. Robert Humble, an orthopedist at the Oweida Clinic. Dr. Humble first treated plaintiff in February 1999, at which time he placed her in a lumbar corset, started her on medications, and put her on light duty work restrictions. Dr. Humble continued to treat plaintiff for several months with medications, cortisone injections and physical therapy. Despite these methods of treatment, plaintiff's condition did not improve.
5. In May 1999, Dr. Humble ordered a pentothal pain study to determine if plaintiff was truly in pain or motivated by secondary gain. The study was conducted and its results indicated that plaintiff was experiencing severe pain in her lower back that radiated up her back. The study further showed that plaintiff had a degenerative disc with mild bulges at L4-5 and at L5-S1. Dr. Humble ordered an epidural for plaintiff in an attempt to alleviate her pain which was performed on 12 July 1999. On 27 July 1999, Dr. Humble reexamined plaintiff. Plaintiff stated that she experienced no relief following the procedure, and complained that her pain had increased. Dr. Humble noted that he still believed "there is some strong symptom magnification being exhibited by this patient which is very concerning to me." Dr. Humble recommended physical therapy, continued plaintiff on light duty with restrictions and referred plaintiff to his partner, Dr. Michael Getter, to determine whether plaintiff was suffering from discogenic pain or was magnifying her symptoms.
6. Dr. Getter determined that surgery was not a viable option and recommended that plaintiff be referred to a pain clinic for treatment, but defendants refused to authorize treatment at a pain clinic. Upon Dr. Getter's recommendation, plaintiff was given a tens unit and a back brace. Plaintiff had to return these items because defendants would not pay for them. When defendants refused payment for the pain clinic treatment, Dr. Getter released plaintiff from his care stating there was nothing further he could offer plaintiff. On 3 December 1999, Dr. Getter found plaintiff to be at maximum medical improvement and he gave plaintiff a 3% permanent partial disability rating to her back based on "the fact that she has just a minimal disc bulge which is actually a variant of normal, [and] she does have physiogenic pain." Little weight is given to Dr. Getter's opinion that plaintiff reached maximum medical improvement on 3 December 1999 as plaintiff was still in need of further treatment at a pain clinic.
7. On 22 December 1999, plaintiff independently sought treatment from physical medicine and rehabilitation specialist Dr. Robert Geidraitis at Miller Orthopedic Clinic. Dr. Geidraitis examined plaintiff and was unable to find any dural tension sites of nerve root irritability or any abnormalities of sensation. He examined plaintiff's MRI and the records of plaintiff's prior medical treatment and found no objective basis for plaintiff's continuing pain. Dr. Geidraitis did not offer any modes of treatment for plaintiff but he referred plaintiff to a pain clinic.
8. Plaintiff then sought treatment with the Southeast Pain Clinic in Kings Mountain, North Carolina where she was seen and treated by Dr. Mark Scheutzow on 12 March 2001. Dr. Scheutzow performed several tests including an MRI and a bone scan. He ordered facet joint injections at L4-5 and L5-Sl facets which were successful in alleviating plaintiff's pain for six days. Based upon these results, Dr. Scheutzow wanted to try radio-frequency thermal neural ablation; however, there is no medical documentation in the record to indicate whether plaintiff ever received such treatment. Other than attempting to refill prescription pain medications, plaintiff has received no further medical treatment after 30 April 2001. There is no indication that Dr. Scheutzow offered an opinion as to whether or not plaintiff had reached maximum medical improvement.
9. On 3 March 1999, plaintiff returned to work on light duty status. Plaintiff was assigned tasks such as cutting lemons, helping fill orders, rolling tablecloths and stuffing envelopes. She was occasionally sent home early due to the pain she was experiencing.
10. At the time plaintiff was released to return to work on light duty, she was assigned work restrictions of no sitting or standing for long periods of time, no lifting over ten pounds, and no bending. The tasks plaintiff was assigned required her to perform the restricted activities. Additionally, according to the memorandum from Bill Gowdy to Melissa Jones that was stipulated into evidence, a recommendation was made for defendants to construct a job offer that might enable them to cease her compensation benefits if plaintiff were not able to perform the job offered.
11. Due to the pain associated with her back condition, plaintiff was unable to perform the job duties of the tasks assigned to her and missed approximately seven days of work. On one occasion, plaintiff failed to call in regarding an absence from work and her employment was terminated on or about 28 April 1999. Evidence was presented that other employees had missed work without calling in and were not terminated. The Full Commission finds that plaintiff's termination was not justified, as the greater weight of the evidence indicates that any other employee who was not injured would not have been terminated for the same reasons. Plaintiff's termination resulted in her inability to earn wages in any employment from that date through the present, and was a direct result of the injuries she sustained in the injury by accident of 6 January 1999.
12. At the time of the hearing plaintiff was still suffering from the same pain as at the time she was terminated and as of the last date of medical treatment. She has not been able to return to work for any employer since her termination due to her pain and work restrictions, although she indicated a desire to return to gainful employment.
13. Plaintiff is in need of additional medical treatment for the injuries resulting from her admittedly compensable injury by accident of 9 January 1999. Defendants unjustly refused to authorize treatment that was previously prescribed by plaintiff's treating physicians, including those physicians selected by defendants. Additionally, no evidence was offered by defendants to suggest that plaintiff was not in need of the treatment as prescribed by her treating physicians.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 6 January 1999, plaintiff sustained an admittedly compensable injury by accident while in the course and scope of her employment with defendant-employer. Said injury by accident resulted in injuries to plaintiff's back. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to receive total disability compensation at the rate of $93.34 per week, from on or about 28 April 1999 and continuing until plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to the payment of the medical expenses incurred for treatment for her resultant injuries she sustained, through 22 December 1999. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing Findings of Facts and Conclusions of Law, the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fees hereinafter approved, defendants shall pay to plaintiff total disability benefits at the rate of $93.34 per week beginning 28 April 1999 and continuing. Those benefits which have accrued shall be paid to plaintiff in a lump sum, subject to attorney's fees approved below.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability. Defendants shall also pay for plaintiff to be re-evaluated by Dr. Getter and provide treatment that he determines is in plaintiff's best interest, including treatment with a pain clinic.
3. A reasonable attorney's fee in the amount of 25% of the compensation awarded to plaintiff in Paragraph 1 of this AWARD is approved for plaintiff's counsel. One fourth of the lump sum payment shall be deducted from plaintiff's award and paid directly to plaintiff's counsel. Thereafter, every fourth payment of compensation shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs of this action.
This the ___ day of September, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN